UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH HOWARD SHERMAN, CDCR #H-41665,<br><br>   Plaintiff,<br><br>vs.<br><br>J. AGUILAR; E. DELGADO; D.R. GONZALES,<br><br>   Defendants. | Civil No.   10-0290 IEG (POR)<br><br>**ORDER:**<br><br>**(1) DENYING PLAINTIFF'S MOTION TO STRIKE; AND**<br><br>**(2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED.R.CIV.P. 56(c)**<br><br>**(ECF Nos. 55, 62)** |

**I.**

**PROCEDURAL BACKGROUND**

Joseph Howard Sherman ("Plaintiff"), a state prisoner incarcerated at Calipatria State Prison ("CAL"), is proceeding pro se and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. On October 15, 2010, the Court issued an Order dismissing all claims and Defendants from this action with the exception of the retaliation claims against Defendants Aguilar, Gonzales and Delgado. (*See* Oct. 15, 2010 Order at 7-9.) Defendants

1  Aguilar, Gonzales and Delgado filed their Answer on March 17, 2011. (*See* Defs.' Answer,
2  ECF No. 27.)

3  Defendants have now filed a Motion for Summary Judgment pursuant to FED.R.CIV.P.
4  56 (ECF No. 55). The Court notified Plaintiff of the requirements for opposing summary
5  judgment pursuant to *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988) and *Rand v.
6  Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc) (ECF No. 57).[1] On February 16, 2012,
7  Plaintiff filed his response in Opposition to Defendants' Motion (ECF No. 59), along with a
8  "Motion to Strike Defendants' Declarations in Support of Motion for Summary Judgment"
9  (ECF No. 62). On March 5, 2012, Defendants filed a Reply to both Plaintiff's Opposition, as
10 well as his Motion to Strike (ECF Nos. 64, 65).

11 While this case was randomly referred to the Honorable Louisa S. Porter pursuant to 28
12 U.S.C. § 636(b)(1)(B) for disposition, the Court has determined that a Report and
13 Recommendation regarding the disposition of the pending Motion is not necessary. *See* S.D.
14 CAL. CIVLR 72.3(a). The Court has further found oral argument unnecessary pursuant to S.D.
15 CAL. CIVLR 7.1.d., and for the reasons set forth below, **DENIES** Plaintiff's Motion to Strike
16 Defendants' Declarations and **GRANTS IN PART AND DENIES IN PART** Defendants'
17 Motion for Summary Judgment pursuant to FED.R.CIV.P. 56(c).

18                                                    **II.**
19                                       **FACTUAL BACKGROUND**

20 Plaintiff has been incarcerated with a sentence of life without the possibility of parole
21 since 1992. (Pl.'s Decl. in Supp. of Opp'n at ¶ 2.) Plaintiff has been housed at Calipatria State
22 Prison ("CAL") on two separate occasions. (*Id.* at ¶ 3.) In Plaintiff's first placement at CAL
23 in 2001, Plaintiff was housed in the sensitive needs yard at which time he came into contact
24 with Defendant Aguilar. (*See* Pl.'s Third Amended Complaint ("TAC") at 9.) Plaintiff claims
25 that in 2002, it became known that Defendant Aguilar was "targeting prisoners with disabilities

26

27      [1] *Klingele* and *Rand* require the district court to ensure that a pro se prisoner has been given
    "fair notice ... of the requirements and consequences of a summary judgment motion." *County of Los
28  Angeles v. Beltran*, 514 F.3d 946, 952 (9th Cir. 2008) (citing *Rand*, 154 F.3d at 960-61).

for harassment treatment." (*Id.*) Plaintiff claims that he assisted the disabled prisoners with a grievance that resulted in the Warden removing Defendant Aguilar from that yard for a six month period. (*Id.* at 9-10.)

However, when a new Warden came to CAL, Plaintiff claims that Defendant Aguilar "returned to his old ways." (*Id.*) In 2007, Plaintiff alleges that he filed "injunctions" and "citizens's complaints," along with his cellmate, against Defendant Aguilar in Imperial County Superior Court. (*Id.* at 10-11.) In 2007, Plaintiff filed a "citizen's complaint" against both Aguilar and Delgado for allegedly agreeing to remove Plaintiff's cellmate from a prison job and replacing him with a favored inmate. (*Id.* at 11.) Plaintiff then met with Defendant Gonzales to be interviewed with regard to the citizen's complaint. (*Id.*) Plaintiff claims Defendant Gonzales permitted Defendant Delgado to be present during one of the interviews. (*Id.*)

On January 11, 2008, Defendant Delgado is alleged to have picked Plaintiff out of twenty (20) prisoners to be searched and confiscated property from Plaintiff. (*Id.*) Following this incident, Defendant Delgado is also alleged to have filed a false Serious Rules Violation report against Plaintiff in retaliation for Plaintiff filing a citizen's complaint. (*Id.*)

On January 14, 2008, Plaintiff reported to his job assignment where he was allegedly told by his supervisor that Defendants Delgado and Gonzales had asked the supervisor to not testify on Plaintiff's behalf at his Serious Rules Violation disciplinary hearing. (*Id.* at 12.) Plaintiff claims Delgado and Gonzales told the supervisor that if Plaintiff "dropped" his grievances and citizen's complaint, they would dismiss the charges against Plaintiff. (*Id.*) Plaintiff alleges he was told that he was not permitted to work and he was confined to quarters by the order of Defendant Delgado. (*Id.*)

On June 19, 2008, Plaintiff's cell was searched by Correctional Officer Sabala[2]. Sabala and another unnamed correctional officer placed Plaintiff's property into eight (8) separate bags, placed his name and CDCR number on each bag and put the "bags into a cart for transport." (*Id.*) Plaintiff alleges Defendant Aguilar "with or without" Defendant Delgado's

---

[2] Sabala is no longer a party to this action. Judgment for this Defendant was entered by the Court on October 15, 2010. (*See* Oct. 15, 2010 Order at 8-9.)

assistance, saw Plaintiff's names on the bags, stopped the cart and removed Plaintiff's property "in retaliation for grievances and lawsuits." (*Id.*) A few days later, on June 26, 2008, Plaintiff claims he encountered Defendant Aguilar and Delgado. (*Id.*) He claims Defendant Aguilar stated "that's what happens to inmates who file paperwork on us" and next time he would destroy all of Plaintiff's property. (*Id.* at 14.)

## III.

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A.   FED.R.CIV.P. 56 Standard of Review

Summary judgment is proper where there is no genuine issue of material fact in dispute and the moving party has shown it is entitled to judgment as a matter of law. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing FED.R.CIV.P. 56(c)).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED.R.CIV.P. 56(c)); *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted).

If the moving party meets its initial responsibility, the burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324; *Bias*, 508 F.3d at 1218. To avoid summary judgment, the non-moving party is "required to present significant, probative evidence tending to support h[is] allegations," *Bias*, 508 F.3d at 1218 (citations omitted), and must point to some evidence in the record that demonstrates "a genuine issue of material fact [which], with all reasonable inferences made in the plaintiff[]'s favor, could convince a reasonable jury to find for the plaintiff[]." *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000) (citing FED.R.CIV.P. 56;

*Celotex*, 477 U.S. at 323); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "To defeat a summary judgment motion ..., the non-moving party 'may not rest upon the mere allegations or denials' in the pleadings. FED.R.CIV.P. 56(e). Instead, he "must establish the existence of a genuine factual dispute on the basis of admissible evidence; bare allegations without evidentiary support are insufficient to survive summary judgment." *Estate of Tucker ex rel. Tucker v. Interscope Records, Inc.*, 515 F.3d 1019, 1033 n. 14 (9th Cir. 2008).

### B.     Plaintiff's Motion to Strike Defendants' Declarations

Plaintiff has filed a "Notice of and Motion to Strike the Declarations of Defendants' Declarations in Support of Motion for Summary Judgment" (ECF No. 62). In this Motion, Plaintiff argues that the Defendants are lying and committing perjury in their Declarations and therefore, all the Declarations should be stricken in their entirety. At this stage, the Court considers only the evidence that is properly submitted and the Declarations filed by Defendants comply with FED.R.CIV.P. 56(c)(4). To the extent that Plaintiff challenges the credibility of the Defendants, the Court cannot make credibility determinations at the summary judgment stage. *See Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1036 (9th Cir. 2005). Thus, Plaintiff's evidentiary objections are OVERRULED and his Motion to Strike Defendants' Declarations is DENIED.

### C.     Defendants' Arguments

Defendants seek summary judgment on the following grounds: (1) no genuine issues of material fact exist to show that any of the Defendants retaliated against Plaintiff; and (2) many of Plaintiff's retaliation claims are barred by the applicable statute of limitations. (Defs.' Mem. of Ps&As in Supp. of Mot. for Summ. J. (ECF No. 55) at 2-16.)

### D.     Retaliation claims

Prisoners have a fundamental "right[s] to file prison grievances," *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003), and to "pursue civil rights litigation in the courts." *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995). "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices." *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). "And because purely retaliatory actions taken

against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Id.* (citing *Pratt v. Rowland*, 65 F.3d 802, 806 & n.4 (9th Cir. 1995)); *see also Thomas v. Carpenter*, 881 F.2d 828, 830 (9th Cir. 1989) (noting that because retaliation by prison officials may chill an inmate's exercise of his legitimate First Amendment rights, such conduct is actionable even if it would not otherwise rise to the level of a constitutional violation).

"[A] viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567-68 (footnote omitted) (citing *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000); *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994)).

### a. Claims against Defendant Gonzales

In Plaintiff's Third Amended Complaint, Plaintiff alleges that he filed a "citizen's complaint" to which Defendant Gonzales interviewed Plaintiff with respect to the claims he made in this complaint. (*See* TAC at 11.) Defendant Gonzales states that he interviewed Plaintiff in response to a grievance he filed on December 31, 2007. (*See* Declaration of D. Gonzales at ¶ 2.) The administrative grievance that was the subject of this interview was filed by Plaintiff on December 12, 2007. (*Id.*, Ex. A, Inmate/Parolee Appeal Form, Log No. CAL-D-0702284.) In this grievance, Plaintiff alleges improper conduct on the part of Defendants Aguilar and Delgado. (*Id.*) Plaintiff alleges, as well as testifies in his deposition, that Defendant Gonzales permitted Defendant Delgado to be present during the interview with Plaintiff. (*See* TAC at 11; Pl.'s Depo. at 57:23-25.) Plaintiff also testified that this allegation is the only claim he has against Defendant Gonzales in this action. (*See* Pl.'s Depo. at 143:7-15.)

Here, there is no evidence in the record to show that Defendant Gonzales took any "adverse action" against Plaintiff. *Rhodes*, 408 F.3d at 567. Plaintiff's only allegation, and his

1 only submission of evidence, is the fact that Defendant Gonzales interviewed Plaintiff with
2 regard to a grievance and purportedly allowed Defendant Delgado, who was the subject of the
3 grievance, to be in the room. Plaintiff offers no other evidence that Defendant Gonzales played
4 any role in taking any other action against Plaintiff. Plaintiff's Third Amended Complaint and
5 deposition testimony is devoid of any suggestion that Defendant Gonzales ever made any
6 statement that could be interpreted as "intimating that some form of punishment or adverse
7 regulatory action would follow" the filing of the grievance. *See Brodheim*, 584 F.3d at 1270
8 (citing *Okwedy v. Molinari*, 333 F.3d 339, 343 (2d Cir. 2003)).

9       In addition, in order to prevail on his retaliation claim, Plaintiff must show that his
10 "protected conduct was a 'substantial' or 'motivating' factor" behind the defendant's conduct."
11 *Id.* (citing *Soranno's Gasco, Inc v. Morgan,* 874 F.2d 1310, 1314 (9th Cir. 1989)). Plaintiff
12 does not identify any other conduct by Defendant Gonzales other than interviewing him
13 following his filing of a grievance. Plaintiff also admits in his deposition testimony that
14 Defendant Gonzales was not involved in the decision to file a disciplinary action against
15 Plaintiff. (*See* Pl.'s Depo at 21-25.)

16       Plaintiff is also required to show that the actions of Defendant Gonzales "did not
17 reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 568. Once again,
18 Plaintiff points to no evidence in the record to satisfy this requirement. Accordingly, based on
19 the record, the Court finds that there is no triable issue of material fact with respect to Plaintiff's
20 claims of retaliation against Defendant Gonzales. Defendant Gonzales' Motion for Summary
21 Judgment on all the claims against him found in Plaintiff's Third Amended Complaint is
22 **GRANTED**.

23       **b.     Claims against Defendant Delgado**

24       Defendant Delgado argues that the only claims against him arise from Plaintiff's
25 allegations that: (1) Delgado issued a false Rules Violation Report ("RVR") against Plaintiff
26 in retaliation for filing grievances; (2) Delgado confined Plaintiff's to his quarters for thirty (30)
27 as a retaliatory act; and (3) Delgado was aware of the retaliatory actions by Defendant Aguilar
28 but did nothing to stop it. (*See* Defs.' Ps & As in Supp. of MSJ at 9.)   Defendants submit

1 Plaintiff's testimony in which he testified that these were the only claims against Delgado. (*See* Pl.'s Depo. at 143:24-25 - 144:1-17.)

It is undisputed that Plaintiff was searched by Defendant Delgado on January 11, 2008. (*See* TAC at 10; Delgado Decl. at ¶ 2.)  What is disputed is whether there was a retaliatory motive behind Delgado's search of Plaintiff, confiscation of property and issuance of the RVR. Defendant Delgado states in declaration that it was typical of an officer assigned in his position to "conduct random searches of the education workers getting off work." (Delgado Decl. at ¶ 2.) Delgado further declares that Plaintiff "appeared to be concealing" contraband under his jacket. (*Id.*) It is undisputed that Plaintiff was carrying files relating to cases of other inmates, a roll of toilet paper and several sheets of blank white paper at the time he was stopped by Defendant Delgado. (*Id.*; Pl.'s Depo at 144:19-25 - 145:1-18.)  It is also undisputed that Plaintiff was found guilty of the charges brought in his disciplinary hearing which was heard and determined by a correctional officer not a party to this action. (*Id.*).

The Plaintiff "bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." *Pratt*, 65 F.3d at 806.  Here, Plaintiff admits to having in his possession items that were determined to be contraband by another correctional officer. (*See* Pl.'s Depo. at 144:18-25 - 145:1-15.)  Plaintiff has pointed to no evidence in the record to support his claim that the actions taken by Delgado of searching Plaintiff and filing an RVR against him had no legitimate penological goals.  Thus, the Court GRANTS Defendant Delgado's Motion for Summary Judgment as to the retaliation claims relating to the events that occurred on January 11, 2008 and the subject disciplinary hearing following the issuance of the RVR.

In Plaintiff's Third Amended Complaint, he alleges that as a result of this incident with his search and confiscation of his property, he was informed by housing staff that Defendant Delgado had given "verbal orders" to confine Plaintiff to his cell, otherwise known as confined to quarters. (*See* TAC at 12.)  In his Opposition, Plaintiff alleges that both Defendant Delgado and Defendant Gonzales "gave verbal orders that Plaintiff was 'confined to quarters.'" (Pl.'s Opp. to MSJ at 7.)  However, Plaintiff also testified in his deposition that there was no evidence

1 that Gonzales was involved in alleged decision to confine Plaintiff to quarters. (*See* Pl.'s Depo
2 at 104:3-6.) Moreover, Defendant Delgado submits in his declaration that he denies issuing this
3 verbal order and regardless, such an order would have to be made in writing and could only
4 have been issued by an officer ranked at a "Lieutenant's level or above." (Delgado Decl. at ¶5.)
5 At the time Plaintiff claims Delgado issued this order, Delgado was the ranking of a Sergeant.
6 (*Id.*)

7 Plaintiff admits there is no written documentation to show that he was confined to his
8 quarters for thirty (30) days at the direction of Defendant Delgado. (*See* Pl.'s Depo. at 91:14-
9 16.) Moreover, Plaintiff does not point to any admissible evidence in the record that would
10 show that Plaintiff was confined to his quarters at the direction of Defendant Delgado.
11 Accordingly, Defendant Delgado's Motion for Summary Judgment as to the claims that he
12 retaliated against Plaintiff by confining Plaintiff to his quarters is **GRANTED**.

13 The final retaliation claim against Defendant Delgado is based on the allegation that
14 Defendant Delgado failed to take any steps to prevent the retaliatory acts by Defendant Aguilar.
15 Specifically, the claim against Delgado is based on the alleged taking of property by Defendant
16 Aguilar. (*See* TAC at 14.) Plaintiff claims Aguilar was responsible for the taking of his
17 property. Plaintiff further claims that Defendant Delgado was standing next to Defendant
18 Aguilar who said to Plaintiff "that's what happens to inmate who file paperwork on us" and
19 "next time all your shits gone." (*Id.*)

20 Defendant Delgado states in his declaration that he "never heard Officer Aguilar say
21 anything to Sherman about Sherman's property." (Delgado Decl. at ¶ 6.) Plaintiff testified in
22 his deposition that "I made the assumption since Sergeant Delgado was standing next to
23 [Aguilar] and didn't say a word one way or the other that apparently he was in agreement with
24 it." (Pl.'s Depo. at 115:6-9.) Plaintiff further testified that he had no information or evidence
25 that Defendant Delgado was in agreement with the alleged statements made by Defendant
26 Aguilar. (*Id.* at 115:10-12.) Plaintiff has the burden on summary judgment to put forth the
27 causation element of a retaliation claim by putting "forth evidence of retaliatory movie, that
28 taken in the light most favorable to him, presents a genuine issue of material fact as to

1  [Delgado's] intent." *Brodheim*, 584 F.3d at 1271 (citing *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th
2  Cir. 2003)).

3  Here, Plaintiff puts for no evidence of a retaliatory intent on the part of Delgado with
4  respect to the issue of standing in proximity of Aguilar when he made the alleged threat.
5  Plaintiff, instead, relies on assumptions and speculation as to what Delgado heard and offers
6  no other evidence to support his claim that Delgado acted with Aguilar in a retaliatory manner.
7  Accordingly, the Court **GRANTS** Defendant Delgado's Motion for Summary Judgment as to
8  all the claims against him.

9  c.  **Claims against Aguilar**

10  First, Defendants apparently move to dismiss all the claims against Defendant Aguilar
11  on the grounds that Plaintiff "does not dispute that he did not exhaust his administrative
12  remedies regarding threats and comments allegedly made to him by Aguilar." (Defs. Memo of
13  Ps & As in Supp. of MSJ at 7.) Defendants then cite to two lines of questioning at Plaintiff's
14  Deposition in which he appears to admit that he did not file grievances with respect to *some* of
15  the issues raised against Aguilar. However, it is well established that non-exhaustion of
16  administrative remedies as set forth in 42 U.S.C. § 1997e(a) is an affirmative defense which
17  defendant prison officials have the burden of raising and proving. *Wyatt v. Terhune*, 315 F.3d
18  1108, 1119 (9th Cir. 2003). This is a position with which the United States Supreme Court
19  agrees and has held that "failure to exhaust is an affirmative defense under the PLRA" and
20  "inmates are not required to specially plead or demonstrate exhaustion in their complaints."
21  *Jones v. Bock*, 549 U.S. 199, 217 (2007). Defendants offer no evidence or any amount of
22  sufficient legal analysis, aside from brief references in Plaintiff's deposition and brief legal
23  citations, to support their conclusion that Plaintiff has failed to exhaust his administrative
24  remedies as to the claims against Defendant Aguilar.

25  Second, Defendants argue that all but one of the claims against Defendant Aguilar are
26  barred by the applicable statute of limitations. Plaintiff refers to incidents in his Third Amended
27  Complaint with respect to Defendant Aguilar in a very general matter by claiming that there has
28  been a pattern of harassment and retaliation by Defendant Aguilar since 1994. (*See* TAC at 9.)

1  However, the specific factual claims with regard to alleged retaliatory acts by Defendant
2  Aguilar found in Plaintiff's Third Amended Complaint arise in 2008 which is well within the
3  applicable statute of limitations.

4  A review of Plaintiff's deposition testimony provided by Defendants indicates that
5  Defense Counsel asked Plaintiff questions regarding incidents that happened prior to 2008. To
6  the extent that Plaintiff intends to allege new facts that are not currently contained in his Third
7  Amended Complaint relating to events that occurred prior to 2008, he may not do so.

8  Because section 1983 contains no specific statute of limitation, federal courts apply the
9  forum state's statute of limitations for personal injury actions. *Lukovsky v. San Francisco*, 535
10 F.3d 1044, 1047(9th Cir. 2008); *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004);
11 *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004), *cert. denied sub nom. Kempton v.*
12 *Maldonado*, 125 S. Ct. 1725 (2005); *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999). Until
13 December 31, 2002, the applicable statute of limitations for a personal injury claim in California
14 was one year. *See Jones*, 393 F.3d at 927 (citing CAL. CIV. PROC. CODE § 340(3) (West 2002)).
15 Effective January 1, 2003, the applicable California statute of limitations was extended to two
16 years. *Id.* (citing CAL. CIV. PROC. CODE. § 335.1.

17 "Under the traditional rule of accrual ... the tort cause of action accrues, and the statute
18 of limitation begins to run, when the wrongful act or omission results in damages." *Wallace*
19 *v. Kato*, 549 U.S. 384, 391-92 (2007). Unlike the length of the limitations period, "the accrual
20 date of a § 1983 cause of action is a question of federal law that is not resolved by reference to
21 state law." *Id.* at 388. "Under federal law, a claim accrues when the plaintiff knows or has
22 reason to know of the injury which is the basis of the action." *Maldonado*, 370 F.3d at 955;
23 *Fink*, 192 F.3d at 914; *Wilson v. Garcia*, 471 U.S. 261, 267 (1985).

24 Because the events raised by Defendants in the deposition occurred from 2004-2006,
25 the Court finds that CAL. CIV. PROC. CODE § 335.1's two-year limitations period applies to
26 Plaintiff's claim. *Maldonado*, 370 F.3d at 954-55. Under CAL. CIV. PROC. CODE § 352.1, the
27 limitations period may be tolled for an additional "period of up to two years based on the
28 disability of imprisonment," however, "th[is] tolling provision applies only to plaintiffs

1  'imprisoned on a criminal charge, or in execution under the sentence of a criminal court for a
2  term of less than for life.'" *Jones*, 393 F.3d at 927 (citing CAL. CIV. PROC. CODE § 352.1(a)).
3  Here, in this matter, it is undisputed that Plaintiff is serving a life term without the possibility
4  of parole. (*See* TAC at 8.) Thus, Plaintiff is not entitled to any statutory tolling of his claims.
5  The claims addressed by Defendants in Plaintiff's Deposition that occurred in 2006 are barred
6  by the applicable statute of limitations and Plaintiff has provided no evidence to support a
7  finding of equitable tolling. Accordingly, the Court will **GRANT** Defendants' Motion to
8  Dismiss all claims against Defendant Aguilar that are alleged to have taken place prior to 2007.

9  Defendants move to dismiss Plaintiff's claims of retaliation by Defendant Aguilar
10  because they claim there is no triable issue of material fact with respect to this issue. (*See* Defs.
11  Memo of Ps & As in Supp. of MSJ at 15.) Defendant Aguilar argues that any snide comments
12  or alleged threats are not actionable because "Plaintiff admitted that Aguilar has never carried
13  out the threats." (*Id.* as 13) Defendants go on to state that "the law is clear that threats are not
14  a sufficient form of 'adverse action' to form the basis of a retaliation claim." (*Id.* citing *Gaut
15  v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987)). This is incorrect. The Ninth Circuit has held that
16  a "mere *threat* of harm an be an adverse action, regardless of whether it is carried out because
17  the threat itself can have a chilling effect." *Brodheim*, 584 F.3d at 1270. The Court went on
18  to state that "the power of a threat lies not in any negative actions eventually taken, but in the
19  in apprehension it creates in the recipient of the threat." *Id.* at 1271.

20  Here, Plaintiff has stated in his verified Third Amended Complaint that Defendant
21  Aguilar stated, after Plaintiff has property removed from his cell, "that's what happens to
22  inmates who file paperwork on us, next time all your shits gone." (*See* TAC at 14.). This
23  statement, if found to be true, could be construed as a threat to Plaintiff to stop filing
24  administrative grievances or he would lose his property and thus, satisfies the "adverse action"
25  element found in *Rhodes*. *Brodheim*, 584 F.3d at 1270. While Defendant Aguilar has
26  submitted a declaration in which he denies making such a statement, this argument goes to the
27  credibility of the two parties and as such, cannot be decided on summary judgment. *See*
28  *Dominguez-Curry*, 424 F.3d at 1036. Defendants do not move for summary judgment on this

claim on any other required element in *Rhodes* except for the element of finding an adverse action. Here, the Court finds that there is a genuine issue of material fact as to whether Defendant Aguilar's alleged comments constitutes an "adverse action." Accordingly, Defendant Aguilar's Motion for Summary Judgment as to Plaintiff's retaliation claim is **DENIED**. This is the final claim remaining in this action.

### IV. Conclusion and Order

For all the reasons set forth above, the Court hereby:

(1) **DENIES** Plaintiff's Motion to Strike Defendants' Declarations;

(2) **GRANTS** Defendants Gonzales and Delgado's Motion for Summary Judgment as to all claims against them pursuant to FED.R.CIV.P. 56. Because there are no remaining claims against these Defendants, and there is no just reason for delay, the Clerk of Court is directed to enter a final judgment as to Defendants Gonzales and Delgado.

(3) **GRANTS** Defendant Aguilar's Motion for Summary Judgment as to all claims prior to 2007 as barred by the applicable statute of limitations pursuant to FED.R.CIV.P. 56;

(4) **DENIES** Defendant Aguilar's Motion for Summary Judgment as to Plaintiff's remaining claims pursuant to FED.R.CIV.P. 56.

**IT IS SO ORDERED**.

DATED: April 2, 2012

_____
**HON. IRMA E. GONZALEZ**
United States District Judge